UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY CASTILLO,

           Plaintiff,

v.

INTEGRITY FINANCIAL SOLUTIONS, LLC,
JESSE ABRAHAM JAIMES,
SAMUEL HERRERA BOLANOS,
UNITED MEDIATION SERVICES L.L.C.,
MICHAEL S. THORNTON, AMERICAN
RECOVERY SOLUTION SERVICES LLC,
HERBERT WASHINGTON GREENE, JR., and
VINCENT JERARD EDWARDS,

           Defendants.

_____/

## COMPLAINT

### I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones

1

operated by hundreds of entities located in and around Los Angeles, California, Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable

from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.     On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.     Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this

complaint.

## II.     Jurisdiction

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper

because the pertinent events took place here.

## III.     Parties

7.      Plaintiff Tammy Castillo is an adult, natural person residing in Kent County,

Michigan.  Ms. Castillo is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Ms. Castillo is a "consumer," "debtor" and "person" as the terms are defined and used

in the MRCPA and MOC.

8.      Defendant Integrity Financial Solutions, LLC ("IFS"), is an active South Carolina

limited liability company, formed on or about October 9, 2013, and purportedly doing business at

3581 Centre Circle, Suite 104, Fort Mill, South Carolina 29715. IFS has done business under

multiple aliases, including: Integrity Financial Services; Legal Mediation Solutions; Legal

Mediation Solutions LLC; Integrity Group; Integrity Financial Group; Integrity Financial Group

LLC; ARS Solutions; UFS Mediation; and United Financial Solutions. The registered agent for

IFS is United States Corporation Agents, Inc., 1591 Savannah Highway, Suite 201, Charleston,

South Carolina 29407.  According to the Articles of Organization filed by IFS with the State of

South Carolina, the Managers of IFS are defendants Jesse Abraham Jaimes and Samuel Herrera

Bolanos. IFS uses interstate commerce and the mails in a business the principal purpose of which

is the collection of debts. IFS regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another. IFS is a "debt collector" as the term is

defined and used in the FDCPA. IFS is a "regulated person" as the term is defined and used in

MRCPA.  Alternatively, IFS is a "collection agency" and "licensee" as the terms are defined and

used in MOC.

9.      Defendants maintain an internet domain (www.integritygroup.info) that was

registered on November 5, 2014, through Godaddy.com, LLC, by defendant Samuel Herrera

Bolanos, 3581 Centre Circle, Suite 104, Fort Mill, South Carolina 29708, telephone number 855-

209-1665, email address samuelherrera64@gmail.com. On or about November 6, 2015,

defendants updated their registration information in efforts to hide their identities. Defendants

use the internet domain name to send and receive email from multiple email addresses, including

customerservice@integritygroup.info.

10.     Defendants Jesse Abraham Jaimes and Samuel Herrera Bolanos and their various

corporate entities also have claimed to do business at 3585 Centre Circle, Fort Mill, South

Carolina 29708.

11.     In efforts to conceal their true location, defendants Jesse Abraham Jaimes and

Samuel Herrera Bolanos and their various corporate entities sometimes have claimed to be doing

business at 2885 Sanford Avenue, Suite 101, Grandville, Michigan 49418. However, that address

is merely the business address of Mailbox Forwarding, Inc. The Mail sent to that address is

forwarded to defendants in South Carolina or is scanned and made available to defendants via the

internet. Defendants' account with Mailbox Forwarding, Inc. was opened on April 30, 2015, by a

person named Travis William Elliott, 207 Edgewood Road, Candler, North Carolina 28715,

telephone number 704-780-4681.

12.     IFS directly and indirectly participated in the efforts to collect an alleged debt

from Ms. Castillo that are described in this complaint.

13.     Defendant Jesse Abraham Jaimes is a natural person, age 28, residing at 2528 O Hara Drive, Charlotte, North Carolina 28273-3849. Mr. Jaimes is an habitual criminal, with an extensive record listing multiple charges in 2014, 2012 and 2009, involving drug and alcohol related offenses. Mr. Jaimes is an owner, officer, member,  manager, employee and agent of defendant IFS.  Mr. Jaimes uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Jaimes regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Jaimes is a "debt collector" as the term is defined and used in the FDCPA. Mr. Jaimes is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Jaimes is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

14.     Mr. Jaimes (a) created the collection policies and procedures used by defendant IFS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of IFS, (c) oversaw the application of the collection policies and procedures used by IFS and its employees and agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by IFS and its employees and agents to collect debts from consumers, including the tactics, scripts and letter that were used to attempt to collect an alleged debt from Ms. Castillo as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by IFS and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by IFS and its employees and agents in attempts to collect an alleged debt from Ms. Castillo as stated in this complaint.

15.     Mr. Jaimes directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Castillo that are described in this complaint.

16.     On or about November 16, 2016, Mr. Jaimes filed with the North Carolina

Secretary of State, Articles of Organization for an entity named Comfort Living Properties, LLC.

On or about January 24, 2017, Mr. Jaimes filed the North Carolina Secretary of State, Articles of

Organization for an entity named JVO Transport, LLC. It will need to be determined in discovery

whether these entities participated in the attempts to collect an alleged debt from Ms. Castillo as

stated in this complaint.

17.     Defendant Samuel Herrera Bolanos is a natural person, age 30, residing at 11843

Broadwater Lane, Charlotte, North Carolina 28273-6702. Mr. Bolanos is an owner, officer,

member, manager, employee and agent of defendant IFS.  Mr. Bolanos uses interstate commerce

and the mails in a business the principal purpose of which is the collection of debts. Mr. Bolanos

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. Mr. Bolanos is a "debt collector" as the term is defined and used in the

FDCPA. Mr. Bolanos is a "regulated person" as the term is defined and used in the MRCPA.

Alternatively, Mr. Bolanos is a "collection agency" and  "licensee" as the terms are defined and

used in the MOC.

18.     Mr. Bolanos (a) created the collection policies and procedures used by defendant

IFS and its employees and agents, in connection with their common efforts to collect consumer

debts, (b) managed or otherwise controlled the daily collection operations of IFS, (c) oversaw the

application of the collection policies and procedures used by IFS and its employees and agents,

(d) drafted, created, approved and ratified the tactics, scripts and letters used by IFS and its

employees and agents to collect debts from consumers, including the tactics, scripts and letter

that were used to attempt to collect an alleged debt from Ms. Castillo as stated in this complaint,

(e) ratified the unlawful debt collection practices and procedures used by IFS and its employees

and agents in connection with their common efforts to collect consumer debts, and (f) had

knowledge of, approved, participated in, and ratified the unlawful debt collection practices used

by IFS and its employees and agents in attempts to collect an alleged debt from Ms. Castillo as

stated in this complaint.

19.     Mr. Bolanos directly and indirectly participated in the efforts to collect an alleged

debt from Ms. Castillo that are described in this complaint.

20.     On or about November 21, 2016, Mr. Jaimes filed with the North Carolina

Secretary of State, Articles of Organization for an entity named Superior Towing & Transport

Services LLC. It will need to be determined in discovery whether this entity participated in the

attempts to collect an alleged debt from Ms. Castillo as stated in this complaint.

21.     Defendants Jesse Abraham Jaimes and Samuel Herrera Bolanos and their various

corporate entities, including defendant IFS, have used numerous telephone numbers to conduct

their unlawful debt collection operation. Essentially, these defendants subscribe to dozens of

telephone numbers, with at least one telephone number for each area code in the country, so that

when defendants place a call to a consumer, the consumer mistakenly believes that defendants'

call is originating from a local caller. Telephone numbers used by defendants include the

following: 206-489-0283, 208-258-8260, 217-212-9035, 248-537-9302, 281-336-1033, 303-479-

3217, 417-680-5341, 423-252-1537, 512-721-0124, 612-502-0043, 616-294-4165, 618-216-

1501, 630-521-5035, 630-521-5203, 714-294-5157, 715-257-3217, 720-623-0407, 727-493-

9053, 734-794-7228, 773-269-3085, 801-614-7903, 850-546-6444, 904-203-1673, 928-297-

3033, 972-347-8021 and 972-544-7189. Toll free telephone numbers used by these defendants

include the following: 844-634-9227, 855-209-1665, 855-756-6498 and 866-503-3080.

22.     Defendant American Recovery Solution Services LLC ("ARSS"), formerly known as Americollect, L.L.C., is an active Georgia limited liability company, formed on or about January 11, 2005. According to the Annual Registration filed by ARSS with the State of Georgia on July 14, 2017, the principal office address for ARSS is 196 Peachtree Street S.W., Atlanta, Georgia 30303.  According to the Better Business Bureau for the Atlanta, Georgia area, ARSS also has done business at 2001 Martin Luther King Jr. Drive S.W., Suite 550, Atlanta, Georgia 30310-5807. The registered agent for ARSS is Herbert W. Greene, Jr., 196 Peachtree Street S.W., Atlanta, Georgia 30303. Telephone numbers used by ARSS include 404-564-3639, 404-691-8309 (fax) and 404-564-2999 (fax). ARSS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ARSS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ARSS is a "debt collector" as the term is defined and used in the FDCPA. ARSS is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, ARSS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

23.     ARSS directly and indirectly participated in the efforts to collect an alleged debt from Ms. Castillo that are described in this complaint.

24.     Defendant Herbert Washington Greene, Jr. is a natural person, age 54, possibly residing at 5510 Bald Ridge Circle, Cumming, Georgia 30041-5400. Mr. Greene is an owner, officer, member, manager, employee and agent of defendant ARSS. Mr. Greene uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Greene regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. Mr. Greene is a "debt collector" as the term is defined and used in the FDCPA. Mr. Greene is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Greene is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

25.     Mr. Greene (a) created the collection policies and procedures used by defendant ARSS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of ARSS, (c) oversaw the application of the collection policies and procedures used by ARSS and its employees and agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by ARSS and its employees and agents to collect debts from consumers, including the tactics, scripts and letter that were used to attempt to collect an alleged debt from Ms. Castillo as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by ARSS and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by ARSS and its employees and agents in attempts to collect an alleged debt from Ms. Castillo as stated in this complaint.

26.     Mr. Greene directly and indirectly participated in the efforts to collect an alleged debt from Ms. Castillo that are described in this complaint.

27.     Defendant Vincent Jerard Edwards is a natural person, age 55, possibly residing at 2808 Kingston Terrace, Atlanta, Georgia 30344-3840. Mr. Edwards is an owner, officer, member, manager, employee and agent of defendant ARSS. Mr. Edwards uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

Mr. Edwards regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Edwards is a "debt collector" as the term is defined and used in the FDCPA. Mr. Edwards is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Edwards is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

28.     Mr. Edwards (a) created the collection policies and procedures used by defendant ARSS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of ARSS, (c) oversaw the application of the collection policies and procedures used by ARSS and its employees and agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by ARSS and its employees and agents to collect debts from consumers, including the tactics, scripts and letter that were used to attempt to collect an alleged debt from Ms. Castillo as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by ARSS and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by ARSS and its employees and agents in attempts to collect an alleged debt from Ms. Castillo as stated in this complaint.

29.     Mr. Edwards directly and indirectly participated in the efforts to collect an alleged debt from Ms. Castillo that are described in this complaint.

30.     Defendant United Mediation Services L.L.C. ("UMS") is a limited liability company, registered with the State of Florida on July 21, 2014. UMS also does business as The Rosetta Group.  UMS claims to do business at 2637 East Atlanta Boulevard, Suite 30081,

Pompano Beach, Florida 33062, but the address is merely a private mail box rented by UMS and its owner in efforts to conceal their true location. According to UCC Filing Statements filed by UMS with the State of Florida, UMS does business at 7302 Basalt Drive, Union City, Georgia 30291-3438.  The registered agent to UMS is defendant Michael S. Thornton, 7302 Basalt Drive, Union City, Georgia 30291-3438.  UMS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UMS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. UMS is a "debt collector" as the term is defined and used in the FDCPA. UMS is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, UMS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

31.     UMS directly and indirectly participated in the efforts to collect an alleged debt from Ms. Castillo that are described in this complaint.

32.     Defendant Michael S. Thornton is a natural person, age 47, purportedly residing at 4302 Basalt Drive, Union City, Georgia 30291-3438.  Mr. Thornton does business under the assumed name United Mediation Services. Mr. Thornton is an owner, officer, manager, employee and agent of defendant UMS.  Mr. Thornton uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Thornton regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Thornton is a "debt collector" as the term is defined and used in the FDCPA. Mr. Thornton is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Thornton is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

33.    Mr. Thornton (a) created the collection policies and procedures used by defendant UMS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of UMS, (c) oversaw the application of the collection policies and procedures used by UMS and its employees and agents, and (d) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by defendants all their employees and agents in attempts to collect an alleged debt from Ms. Castillo as stated in this complaint.

34.    Mr. Thornton directly and indirectly participated in the efforts to collect an alleged debt from Ms. Castillo that are described in this complaint.

35.    On February 12, 2016, a UCC filing statement (No. 03816001937) was filed with the Superior Court Clerk's Office for Coweta County, Georgia, listing Michael Thornton and United Mediation Services as co-debtors and Corporation Service Company as agent for the secured party.  The UCC filing statement listed as collateral, portfolios of delinquent consumer account and related debt, and the proceeds from the collection or sale of the delinquent consumer accounts and related debt.

36.    On March 30, 2015, a UCC filing statement (No. 06015002889) was filed with the Superior Court Clerk's Office for Fulton County, Georgia, listing Michael Thornton as debtor and Springleaf Financial Services as the secured party.  The UCC filing statement listed as collateral, computer equipment, purchased on credit by Mr. Thornton for use in his debt collection operation.

37.    Prior to forming UMS, Mr. Thornton owned and operated Dorsey Thornton And Associates LLC, a Georgia limited liability company, through which Mr. Thornton and his

employees routinely violated the FDCPA by (a) threatening consumers with arrest or imprisonment if they did not pay the debt, (b) refusing to send consumers notices as required by law, (c) falsely identifying themselves as "investigators" rather than debt collectors, (d) disclosing consumers' private information to third parties, and (e) calling consumers during prohibited hours. In February of 2012, Mr. Thornton entered into an Assurance of Voluntary Compliance with the Consumer Protection Unit for the State of Georgia, pursuant to which Mr. Thornton was required to forego the collection of 31,433 accounts representing a total of $15,491,899.36 in consumer debt, pay a civil penalty, and reimburse the State of Georgia for investigative and legal expenses.

38.    Prior to forming Dorsey Thornton And Associates LLC, Mr. Thornton was employed as a debt collector by Trauner, Cohen & Thomas, L.L.P. ("TCT"), a law firm located in Atlanta, Georgia. On July 1, 2009, TCT was sued by its client, NCO Financial Systems, Inc., which alleged that TCT had sought and received from NCO, reimbursements for legal costs that TCT had not actually incurred. On September 30, 2010, a consent judgment was entered in favor of NCO and against TCT, in the amount of $3,000,000.00.  TCT went out of business. Mr. Thornton (along with another TCT ex-employee named Wyteria Shamia Dorsey) moved on to form Dorsey Thornton And Associates LLC.

39.    All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and

14

making each participant jointly and severally for the unlawful acts of each of the other participants.

40.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

41.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

42.    On or about September 6, 2007, plaintiff Tammy Castillo borrowed a small amount of money from a lender named Allied Check Cashing Michigan LLC, doing business as Allied Cash Advance ("Allied"), and located at 73 54th Street, S.W., Suite B, Grand Rapids, Michigan 49548.  Ms. Castillo borrowed and used the money for personal, family and household purposes.  Allied assigned the transaction an original account number of ****23004302.

43.    Ms. Castillo borrowed the money in what is commonly called a "payday loan." Ms. Castillo borrowed approximately $300.00 for a term of approximately two weeks. Allied charged Ms. Castillo interest at an annual rate of approximately 390 percent. Ms. Castillo became obligated to repay Allied the sum of approximately $367.45.

44.    In Michigan, payday loans are regulated by the Deferred Presentment Service Transactions Act, MCL 487.2122 *et seq.*

45.    Allied claimed that Ms. Castillo failed to repay the debt.

46.    Ms. Castillo's account became delinquent and in default in 2007. In Michigan, defaulted payday loan accounts are subject to a six-year statute of limitation.  Accordingly, beginning in 2013, the account and related debt were no longer judicially enforceable by operation of the applicable Michigan statute of limitation.  At all times since 2013, the debt has been time-barred.

47.    Allied charged off the account and related debt.

48.    Allied sold and transferred the account and related debt to an entity named National Credit Adjusters, L.L.C. ("NCA"), located at 327 West 4th Street, Hutchinson, Kansas 67504.

49.     Allied claims that it did not retain any interest in the transferred account and related debt.

50.     On or about April 17, 2013, NCA sold and transferred the account and related debt to a New York entity named Chebat Portfolio Management, LLC ("CPM").

51.     NCA claims that it did not retain any interest in the transferred account and related debt.

52.     In 2013, CPM placed the account for collection with a related New York entity named The Bristol Group, Inc. ("Bristol").

53.     CPM retained full ownership in the placed account.

54.     In April of 2013, Bristol and CPM placed multiple telephone calls to Ms. Castillo in connection with efforts to collect the debt and violated the FDCPA and Michigan law.

55.     On October 25, 2013, Ms. Castillo filed a lawsuit against Bristol, CPM, and their owners and operators, Jimmy H. Chebat, Michelle M. Mesi and Christy A. Perez, alleging that the defendants had violated the FDCPA and Michigan law in their efforts to collect the account and related debt. The lawsuits was filed in the United States District Court for the Western District of Michigan, Case No. 1:13-cv-1180.

56.     On November 15, 2013, Ms. Castillo and the defendants in Case No. 1:13-cv-1180 settled their dispute. On November 16, 2013, the lawsuit was dismissed with prejudice. Any debt that Ms. Castillo may have owed to any entity in connection with the Allied account was expressly extinguished under the terms of her settlement of the lawsuit with CPM.

57.     Despite the foregoing, defendants United Mediation Services L.L.C. and Michael S. Thornton stole or otherwise acquired stolen information regarding the Allied account and

extinguished debt, along with Ms. Castillo's personal and financial information.

58.     On June 28, 2016, UMS and Mr. Thornton and non-parties Pacific Coast

Recovery Group, LLC ("PCRG") and its owner David A. Barrett entered into a Charged-Off

Receivables Purchase Agreement, pursuant to which UMS and Mr. Thornton forwarded to

PCRG the stolen information regarding the Allied account and extinguished debt, along with Ms.

Castillo's personal and financial information, for the purpose of having PCRG contact Ms.

Castillo and coerce her into paying money that she does not owe.  In connection with the

Charged-Off Receivables Purchase Agreement, Mr. Thornton on behalf of UMS signed a

document captioned "Assignment, Title Declaration & Bill of Sale," claiming that UMS had

acquired the account from defendant Debt Stop Store LLC, which supposedly acquired the

account from an unknown entity named "WHR Recievables," which supposedly acquired the

account from National Credit Adjusters, LLC.

59.     According to the NCA Legal Department, NCA never sold Ms. Castillo's account

to WHR Receivables and the chain of title produced by UMS and Mr. Thornton was false and a

fabrication.

60.     In September of 2016, PCRG and its employee placed a telephone call to Ms.

Castillo in connection with efforts to collect the extinguished Allied debt. In the ensuing

telephone conversations, PCRG violated the FDCPA and Michigan law.

61.     In September of 2016, Ms. Castillo's attorney, Phillip C. Rogers, sent an email to

PCRG and Mr. Barrett, demanding that they cease all direct communications with Ms. Castillo.

62.     In September of 2016, Mr. Barrett sent an email to Mr. Castillo's attorney,

conceding that UMS and Mr. Thornton had sold to PCRG a portfolio of defective Allied

accounts. Specifically, the data for the accounts had been altered, with false representations by Mr. Thornton that the accounts became delinquent in 2011, when in fact the accounts became delinquent in 2007 and were time-barred.

63.     On October 10, 2016, Ms. Castillo's attorney sent an email to PCRG, Mr. Barrett, UMS and Mr. Thornton. Attached to the email was a draft complaint to be filed on behalf of Ms. Castillo and against PCRG, Mr. Barrett, UMS and Mr. Thornton in the United States District Court for the Western District of Michigan, alleging that the named defendants had violated the FDCPA and Michigan law by attempting to coerce the payment of money from Ms. Castillo in connection with the stolen, extinguished, and time-barred Allied account.

64.     On October 14, 2016, Ms. Castillo and Mr. Barrett entered into an agreement to settle Ms. Castillo's claims against PCRG and Mr. Barrett. However, the agreement expressly excluded UMS and Mr. Thornton. According to Mr. Barrett, Mr. Thornton expressly communicated to Mr. Barrett that UMS and Mr. Thornton had no interest in settling any of Ms. Castillo's claims against them.

65.     Despite the foregoing, UMS and Mr. Thornton continued to sell to con men around the country, stolen information regarding the Allied account and extinguished debt, along with Ms. Castillo's personal and financial information.

66.     On or about June 16, 2017, UMS and Mr. Thornton sold to defendant American Recovery Service Solutions LLC and Integrity Financial Solutions, LLC, stolen information regarding the Allied account and extinguished debt, along with Ms. Castillo's personal and financial information. Alternatively, UMS and Mr. Thornton placed the Allied account for collection with ARSS and IFS, with UMS and Mr. Thornton to receive a share of any money

collected from Ms. Castillo. Alternatively, UMS and Mr. Thornton sold the Allied account to ARSS, and ARSS then placed the account with IFS for collection.

67.     In July of 2017, IFS and its employees and agents made multiple telephone calls to Ms. Castillo's cellular telephone and left multiple computer-generated messages on Ms. Castillo's voice mail, representing that a lawsuit was pending against Ms. Castillo, with a "Case Number 1316752."  The messages contained multiple, false threats, including that a decision had been made on Ms. Castillo's behalf regarding the "pending matter" filed against Ms. Castillo, and that Ms. Castillo "must call back" with her "attorney information or full payment to avoid further proceedings." According to Ms. Castillo's caller ID, all of the calls originated from telephone number 616-294-4165. The messages instructed Ms. Castillo to make a return call to telephone number 630-251-5203.

68.     On July 24, 2017, Ms. Castillo spoke with an IFS employee and agent who identified himself as "Mr. Wise" with "United Financial Solutions." In the ensuing conversation, the IFS employee and agent made the following representations to Ms. Castillo:

a)     Ms. Castillo owed $367.45 on an unpaid Allied Cash Advance account.

b)     A lawsuit, Case Number 1316752, was pending against Ms. Castillo to collect the debt.

c)     Ms. Castillo was about to be served with the lawsuit.

d)     Ms. Castillo needed to get a lawyer.

Ms. Castillo terminated the conversation.

69.     On August 1 and 2, 2017, IFS and its employees and agents made additional telephone calls to Ms. Castillo's cellular telephone and left additional computer-generated

messages on Ms. Castillo's voice mail, representing that a lawsuit was pending against Ms. Castillo, with a "Case Number 1316752." The messages contained multiple, false threats, including that a decision had been made on Ms. Castillo's behalf regarding the "pending matter" filed against Ms. Castillo, and that Ms. Castillo "must call back" with her "attorney information or full payment to avoid further proceedings." According to Ms. Castillo's caller ID, all of the calls originated from telephone number 616-294-4165. The messages instructed Ms. Castillo to make a return call to "Greg Fitzgerald" at telephone number 773-269-3085.

70.     On August 17, 2017, Ms. Castillo placed a call to IFS at telephone number 773-269-3085. The call was answered by a pre-recorded greeting with the words: "Thank you for calling USS Mediation. . . . If you are calling in reference to a case number, please press 1." Ms. Castillo pressed 1 and was transferred to an IFS employee and agent who identified herself as "Tiffany Brown" with "United Financial Solutions." Ms. Castillo stated that she was responding to messages left on her cellular telephone voice mail regarding "Case Number 1316752." In the ensuing conversation, the IFS employee and agent made the following representations to Ms. Castillo:

a)     Ms. Castillo owed $367.45 on an unpaid Allied Cash Advance account.

b)     The original Allied Cash Advance account number was 23004302.

c)     United Financial Solutions had been retained by Allied Cash Advance to collect the account.

d)     "Greg Fitzgerald is one of the attorneys in our office. He makes the calls. I'm his assistant, and basically, I just handle the account and he goes to and from court or whoever he has to take to court."

21

     e)       "Now, what I can do is a settlement of $183.72, the only thing about that

              settlement is it has to be paid by the 31st of the month, or you can do a

              payment arrangement on the balance of $367.45."

In response to the above-stated representations made by the IFS employee and agent, Ms. Castillo

agreed to pay money by debit card to IFS, for the sole purpose of more fully identifying the

entities involved in the theft of Ms. Castillo's private personal and financial information, and the

related efforts to coerce the payment of money from Ms. Castillo with false threats of litigation

on a counterfeit, extinguished, and time-barred account.

     71.     On August 17, 2017, Ms. Castillo used a debit card issued by Chase Bank to make

a payment to IFS in the amount of $100.00. According to Chase Bank, the payment was

processed that same day as a "point of sale" transaction by "LEGAL MEDIATION

SOLUTIONS, 855-756-6498, FORT MILL, SC." According to Chase Bank, Legal Mediation

Solutions is actually defendant Integrity Financial Solutions, LLC.

     72.     Calls placed to telephone number 855-756-6498 are answered by a pre-recorded

greeting with the words: "Thank you for calling ARS Solutions. . . . If you are calling in

reference to a case number, please press 1." The person who recorded the greeting is the same

person who recorded the greeting for USS Mediation as described above.

     73.     On August 18, 2017, IFS sent an email to Ms. Castillo with an attached "Payment

Plan" that purported to be from "Integrity Financial Service" as well as "Legal Mediation

Solutions LLC." The email instructed Ms. Castillo to sign and approve the payment plan. Ms.

Castillo refused to sign and approve the payment plan. The email listed an IFS email address of

customerservice@integritygroup.info. A copy of the email and related "Payment Plan" are

attached as Exhibit A.

74.     On August 22, 2017, Ms. Castillo sent an email to IFS, asking IFS to state the date upon which IFS claimed to have acquired the Allied account and to identify the entity from whom IFS claimed to have acquired the Allied account. On August 23, 2017, IFS sent an email to Ms. Castillo, responding that IFS claims to have acquired the Allied account on June 16, 2017 from United Mediation Services L.L.C. and Mr. Thornton. A copy of the emails is attached as Exhibit B.

75.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

76.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

77.     Defendants and their employees and agents falsely represented the amount of Ms. Castillo's alleged debt.

78.     Defendants and their employees and agents falsely represented that Ms. Castillo owed a debt that is not owed.

79.     Defendants and their employees and agents falsely represented that they had the right to collect the alleged debt.

80.     Defendants and their employees and agents falsely represented and falsely implied

23

that defendants are lawyers.

81.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

82.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

83.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Castillo to collect the alleged debt.

84.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Castillo to collect the alleged debt.

85.     Defendants and their employees and agents falsely represented and falsely implied that Ms. Castillo was about to be served with a summons and complaint in a lawsuit filed against Ms. Castillo to collect the alleged debt.

86.     Defendants and their employees and agents falsely and wrongfully threatened that a lawsuit would be filed or already had been filed against Ms. Castillo to collect a time-barred debt.

87.     Defendants and their employees and agents falsely represented and falsely implied that they had been retained by Allied to collect the alleged debt from Ms. Castillo.

88.     Defendants did not intend to file a lawsuit against Ms. Castillo in any Michigan court in efforts to collect the alleged debt.

89.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

90.     Defendants wrongfully communicated with Ms. Castillo in efforts to collect the

24

alleged debt, despite the fact that defendants knew, or should have know, that Ms. Castillo was represented by a lawyer in connection with the alleged debt and the lawyer's name, address, telephone number and email address were known to defendants.

91.     The FDCPA states that it is unlawful for a debt collector to communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, the attorney's name and address. 15 U.S.C. § 1692c(a)(2).

92.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

93.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

94.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

95.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

96.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

97.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15

U.S.C. § 1692e(3).

98.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

99.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

100.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

101.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

102.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

103.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

104.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

105.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

106.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692c, 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (5), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

107.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

108.    Defendants and their employees and agents failed to timely send to Ms. Castillo a notice containing the information required by 15 U.S.C. § 1692g(a).

109.    Defendants UMS and Mr. Thornton wrongfully communicated to IFS that Ms. Castillo owed a debt that she did not owe. Defendants UMS and Mr. Thornton wrongfully provided Ms. Castillo's stolen account information and stolen personal information to IFS, knowing that the information would be used in efforts to coerce the payment of money from Ms. Castillo on an account that has been extinguished and is time-barred.

110.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

111.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

112.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15

U.S.C. § 1692(e).

113.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

114.    In connection with efforts to collect an alleged debt from Ms. Castillo, defendants obtained personal information regarding Ms. Castillo from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

115.    Alternatively, in connection with efforts to collect an alleged debt from Ms. Castillo, defendants obtained personal information regarding Ms. Castillo from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

116.    The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

117.    The TLO database is derived in part from non-public motor vehicle records.

Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information. A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

118.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

119.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

120.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

121.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

122.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

123.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Ms. Castillo.

124.    Defendants used Accurint or TLO to obtain, disclose and use personal information

regarding Ms. Castillo.

125.    Defendants made a false representation to Accurint or TLO to obtain personal

information regarding Ms. Castillo that was derived from Ms. Castillo's motor vehicle record.

126.    Alternatively, the entity that obtained Ms. Castillo's personal information

from Accurint or TLO and disclosed the personal information to defendants, made a false

representation to Accurint or TLO to obtain personal information regarding Ms. Castillo that was

derived from Ms. Castillo's motor vehicle record.

127.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

128.    Defendants knowingly obtained, disclosed and used Ms. Castillo's personal

information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with

willful or reckless disregard for the law.

129.    No defendant had a "permissible use" as the phrase is defined in the DPPA to

obtain, use or disclose Ms. Castillo's personal information obtained from Accurint or TLO.

130.    No defendant had Ms. Castillo's consent, permission, authorization or waiver to

obtain Ms. Castillo's personal information from Accurint or TLO.

131.    A civil action under the DPPA may be commenced within four years after the

cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

132.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

133.    All defendants, and their employees and agents, are engaged in a criminal organization and scheme, through which they (a) steal or purchase stolen consumer account information, (b) use that stolen information to acquire additional personal information regarding the consumers in violation of the DPPA, and (c) place calls to the consumers' telephones and use unlawful debt collection tactics to collect money from consumers in violation of the FDCPA and (where applicable) Michigan law.

134.    Defendants, and their employees and agents, each have intentionally and wilfully violated the FDCPA, DPPA, MRCPA and MOC.

135.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

136.    Each defendant shared Ms. Castillo's personal and private financial information among the other defendants, knowing that the other defendants would engage in the unlawful debt collection practices that are described in this complaint.

137.    Each defendant owed a duty of care to Ms. Castillo, not to obtain and not to share Ms. Castillo's personal and private financial information with entities that each defendant knew or should have known had no right to possess the information and that each defendant knew or should have known would use that information to attempt to unlawfully coerce the payment of

money from Ms. Castillo. Each defendant breached the duty of care owed to Ms. Castillo.

138.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

139.    Plaintiff incorporates the foregoing paragraphs by reference.

140.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692c;

b)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

d)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

e)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

141.    Plaintiff incorporates the foregoing paragraphs by reference.

142.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to 18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

g)      An order requiring defendants to provide plaintiff with the original of all documents pursuant to which defendants obtained plaintiff's stolen account information, so that plaintiff may take steps to determine the identity of all entities

33

that have had possession of her stolen account information and thereby enable

plaintiff to pursue those entities in efforts to protect plaintiff's credit identify from

being further compromised and harmed.

**Count 3 – Michigan Regulation of Collection Practices Act**

143.    Plaintiff incorporates the foregoing paragraphs by reference.

144.    Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

b)    Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

c)    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, or sale of the debtor's property;

d)    Defendants violated M.C.L. § 445.252(g) by communicating with a debtor

without accurately disclosing the caller's identity;

e)    Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt; and

f)    Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 4 – Michigan Occupational Code

145.    Plaintiff incorporates the foregoing paragraphs by reference.

146.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

d)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

35

abusive method to collect a debt;

f)    Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

g)    Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 339.916;

b)    Treble the actual damages pursuant to M.C.L. § 339.916;

c)    Statutory damages pursuant to M.C.L. § 339.916;

d)    Equitable relief pursuant to M.C.L. § 339.916; and

e)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 5 – Invasion of Privacy

147.    Plaintiff incorporates the foregoing paragraphs by reference.

148.    Defendants' acts and omissions were undertaken willfully, maliciously,

intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

149.    Defendants' acts and omissions were extreme and outrageous.

150.    Defendants' acts and omissions have caused plaintiff's personal and

financial information to be peddled around the country to con men and criminals, exposing

plaintiff to repeated and future harm, credit identity theft, and other invasions of her privacy.

151.    As an actual and proximate result of defendants' invasion of plaintiff's right to

privacy, plaintiff has suffered, and will continue to suffer, actual damages for which she should

be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

a)       Actual damages;

b)       Exemplary damages;

c)       Equitable relief, including an injunction, enjoining defendants from

         communicating plaintiff's personal information to any entity;

d)       Costs and reasonable attorney's fees; and

e)       Such further relief as the court deems just and proper.

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: September 18, 2017                          /s/ Phillip C. Rogers
                                                  Phillip C. Rogers (P34356)
                                                  Kevin J. Rogers (P81303)
                                                  Attorneys for Plaintiff
                                                  6140 28th Street SE, Suite 115
                                                  Grand Rapids, Michigan 49546-6938
                                                  (616) 776-1176
                                                  ConsumerLawyer@aol.com