UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY CASTILLO,

        Plaintiff,

v.

INTEGRITY FINANCIAL
SOLUTIONS, LLC, et al.,

        Defendants.

_____/

Case No. 1:17-cv-841

HON. JANET T. NEFF

PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT

**I.**    **Introduction.**

Plaintiff Tammy Castillo hereby applies for entry of a default judgment against defendants Michael S. Thornton and United Mediation Services L.L.C. ("UMS"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

As allowed by the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.,* Ms. Castillo requests an award of statutory damages in the amount of $1,000.00 (15 U.S.C. §1692k(a)(2)(A)). Also, as set forth in the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Ms. Castillo requests an award of actual/liquidated damages in the amount of $2,500.00 (18 U.S.C. § 2724(b)(1)), and punitive damages in the amount of $25,000.00 (18 U.S.C. § 2724(b)(2)). After entry of default judgment, Ms. Castillo intends to move for an award of costs and attorney's fees pursuant to Rule 54(d)(1) and (2), 15 U.S.C. §1692k(a)(3), and 18 U.S.C. § 2724(b)(3)).

**II.     Procedural History.**

On September 18, 2017 and November 30, 2017, Ms. Castillo filed her Complaint (ECF No. 1) and First Amended Complaint (ECF No. 12) against defendants, claiming violations of the FDCPA, DPPA, and similar Michigan laws.

On November 19, 2017, defendants Michael S. Thornton and UMS were served with Summons, Complaint and First Amended Complaint. (ECF Nos. 13 and 14).

On January 3, 2018, the Clerk of the Court entered the default of defendants Michael S. Thornton and UMS for failure to defend pursuant to Rule 55(a). (ECF No. 19).

All other entities named as defendants in the Complaint and First Amended Complaint have been dismissed from this action. (ECF Nos. 11 and 16).

**III.    Defendants' unlawful debt collection scam**

As alleged in the complaint, defendants are debt collectors who operate call center boiler rooms to place telephone calls to consumers throughout the United States in efforts to criminally extort the payment of money from consumers. Essentially, defendants purchase portfolios of stolen consumer credit account information and related stolen personal financial information, and use that information to telephone consumers, their relatives, their employers, and other third parties, and make false threats of pending litigation and criminal prosecution. Defendants and their employees and agents frequently pretend to be process servers, attorneys or law enforcement officers. Defendants conceal their true identity and location by using unregistered names and toll free telephone numbers that are difficult to trace.

In the past few years, the Federal Trade Commission, Consumer Financial Protection Bureau and Federal Bureau of Investigation have shut down many of these operations, but the

government so far has been unable to eliminate this pox. In November of 2015, the FTC and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative, dubbed Operation Collection Protection, for the stated purpose of bringing to justice debt collection scam operators such as defendants. www.ftc.gov/news-events/press-releases/2015/11/ftc-federal-state-local-law-enforcement-partners-announce.

Ms. Castillo is a victim of defendants' unlawful scheme. As detailed in Ms. Castillo's First Amended Complaint ("FAC"), in September of 2007, Ms. Castillo borrowed approximately $300.00 from Allied Check Cashing Michigan LLC ("Allied"). (FAC ¶¶ 35-36). The account became delinquent and in default in 2007. (FAC ¶ 38-39). The subsequent purchaser of the delinquent account extinguished the account and any related debt. (FAC ¶¶ 40-49).

Despite the foregoing, defendants UMS and Michael S. Thornton stole or otherwise acquired stolen information regarding the Allied account and extinguished debt, along with Ms. Castillo's personal and financial information. (FAC ¶ 50).

On June 28, 2016, UMS and Mr. Thornton sold Ms. Castillo's stolen account and personal financial information to an entity named Pacific Coast Recovery Group, LLC ("PCRG") and its owner David Barrett. In September of 2016, PCRG and its employee placed threatening telephone calls to Ms. Castillo in connection with efforts to collect the extinguished Allied debt. On October 10, 2016, Ms. Castillo's attorney sent an email to PCRG, Mr. Barrett, UMS and Mr. Thornton, with an attached draft complaint to be filed on behalf of Ms. Castillo and against PCRG, Mr. Barrett, UMS and Mr. Thornton in the United States District Court for the Western District of Michigan, alleging that the named defendants had violated the FDCPA and Michigan

3

law by attempting to coerce the payment of money from Ms. Castillo in connection with the stolen, extinguished, and time-barred Allied account. (FAC ¶¶ 51-58).

On October 14, 2016, Ms. Castillo and Mr. Barrett entered into an agreement to settle Ms. Castillo's then existing claims against PCRG and Mr. Barrett. However, the agreement expressly excluded UMS and Mr. Thornton. According to Mr. Barrett, Mr. Thornton expressly communicated to Mr. Barrett that UMS and Mr. Thornton had no interest in settling any of Ms. Castillo's claims against them. (FAC ¶ 59).

On June 6, 2017, UMS and Mr. Thornton again sold Ms. Castillo's stolen account and personal financial information, that second time to an entity named Integrity Financial Solutions, LLC ("IFS"). (FAC ¶¶ 60-61). In July of 2017, IFS and its employees and agents used the stolen information they had purchased from UMS and Mr. Thornton to falsely threaten Ms. Castillo by telephone and in writing with pending litigation and prosecution unless Ms. Castillo paid money to the defendants. (FAC ¶¶ 62-65).

Mr. Thornton has been operating this sort of scam for many years. UMS is a limited liability company, registered by Mr. Thornton with the State of Florida on July 21, 2014. (FAC ¶ 23). Prior to forming UMS, Mr. Thornton owned and operated Dorsey Thornton And Associates LLC, a Georgia limited liability company, through which Mr. Thornton and his employees routinely violated the FDCPA by (a) threatening consumers with arrest or imprisonment if they did not pay the debt, (b) refusing to send consumers notices as required by law, (c) falsely identifying themselves as "investigators" rather than debt collectors, (d) disclosing consumers' private information to third parties, and (e) calling consumers during prohibited hours. In February of 2012, Mr. Thornton entered into an Assurance of Voluntary Compliance with the Consumer Protection Unit for the State of Georgia, pursuant to which Mr. Thornton was required

4

to forego the collection of 31,433 accounts representing a total of $15,491,899.36 in consumer debt, pay a civil penalty, and reimburse the State of Georgia for investigative and legal expenses. (FAC ¶ 30).

Prior to forming Dorsey Thornton And Associates LLC, Mr. Thornton was employed as a debt collector by Trauner, Cohen & Thomas, L.L.P. ("TCT"), a law firm located in Atlanta, Georgia. On July 1, 2009, TCT was sued by its client, NCO Financial Systems, Inc., which alleged that TCT had sought and received from NCO, reimbursements for legal costs that TCT had not actually incurred. On September 30, 2010, a consent judgment was entered in favor of NCO and against TCT, in the amount of $3,000,000.00.  TCT went out of business. Mr. Thornton (along with another TCT ex-employee named Wyteria Shamia Dorsey) moved on to form Dorsey Thornton And Associates LLC. Wyteria Shamia Dorsey is Mr. Thornton's ex-wife. (FAC ¶ 31).

**IV.    The FDCPA provides for an award of actual damages plus statutory damages.**

The FDCPA provides for an award of damages to a successful consumer:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –
>
> > (1)  any actual damage sustained by such person as a result of such failure;
> > (2) in the case of any action by an individual, such additional damages as the court may allow, buy not exceeding $1,000;
> >                  *   *   *
> > and
> > (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a).

Plaintiff waives her claim to actual damages under §1692k(a)(1) but seeks statutory

5

damages in the amount of $1,000.00 under §1692k(a)(2)(A). The FDCPA states that in determining the amount of statutory damages, the court shall consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." §1692k(b)(1).

Plaintiff submits that all of these factors support an award of $1,000.00 in statutory damages. As to the frequency and persistence of defendants' noncompliance, the complaint alleges that defendants have operated a telephone boiler room with scripted violations of the law which indicates a pattern and practice of flouting the FDCPA, and that Mr. Thornton has (so far) sold Ms. Castillo's stolen information at least twice.

As to the nature and intentionality of defendants' noncompliance, defendants represented that they had filed or would be filing a lawsuit against plaintiff to collect a debt that defendants did not intend to file. Defendants are not lawyers. Defendants do not file lawsuits to collect debts. Defendants' impersonation of government employees and lawyers, defendants' false threats of litigation, and defendants' outrageous behavior undermine the rule of law and the legal profession. Defendants are mere identity thieves, knowingly running an elaborate con on unsuspecting consumers.

Finally, it is worth noting that the FDCPA was enacted in the late 1970's and that the amount of statutory damages, meant in part to be a deterrent, has never been adjusted for inflation, despite the passage of approximately forty years.

**V.     The DPPA provides for actual/liquidated damages and punitive damages.**

The DPPA provides for an award of actual/liquidated damages to a successful consumer:

> **(a) Cause of action.**--A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may

>bring a civil action in a United States district court.
>
>**(b) Remedies.**--The court may award–
>
>>**(1)** actual damages, but not less than liquidated damages in the amount of $2,500;
>>**(2)** punitive damages upon proof of willful or reckless disregard of the law;
>>**(3)** reasonable attorneys' fees and other litigation costs reasonably incurred; and
>>**(4)** such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. §2724.

As stated in the complaint, defendants have unlawfully obtained and used personal information regarding Ms. Castillo, derived from motor vehicle records, to contact and attempt to extort the payment of money from Ms. Castillo. Plaintiff requests actual damages, liquidated, in the amount of $2,500.00 under §2724(b)(1). Plaintiff also requests punitive damages under §2724(b)(2) in the amount of $25,000.00. Plaintiff submits that punitive damages in a meaningful amount are needed in order to deter Mr. Thornton and his company UMS from continuing to sell Ms. Castillo's stolen personal and financial information to other con men around the country. When sued, Mr. Thornton ignores the lawsuit and defaults. A judgment without punitive damages does not deter Mr. Thornton from continuing to violate the law.

As demonstrated in the First Amended Complaint, Mr. Thornton has continued to sell Ms. Castillo's stolen personal information, including her full name, residential address, telephone number, social security number, date of birth, and detailed banking information. Mr. Thornton has continued to sell the stolen information, despite the fact that Mr. Thornton has actual knowledge that Ms. Castillo's account and related debt are extinguished, and that her personal and financial information is stolen. Mr. Thornton continues to subject Ms. Castillo to credit identity theft, abuse, invasion of her privacy, and incessant fear for her financial and personal safety.

**VI.     Conclusion**

Plaintiff Tammy Castillo respectfully request that the Court enter judgment in favor of Ms. Castillo and against defendants RW Financial Group, LLC, RK Recoveries, LLC, Kasandra L. Boatwright and Reginald E. Boatwright II, and award plaintiff statutory damages in the amount of $1,000.00 pursuant to the FDCPA; actual/liquidated damages in the amount of $2,500.00 pursuant to the DPPA; and punitive damages in the amount of $25,000.00 pursuant to the DPPA, for a total damage award of $28,500.00.

Following entry of default judgment, plaintiff intends to move for an award of costs and attorney's fees pursuant to Rule 54(d)(1) and (2), 15 U.S.C. §1692k(a)(3), and 18 U.S.C. § 2724(b)(3))

Dated: March 7, 2018                                                            Respectfully submitted,

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
6140 28th Street S.E., Suite 115
Grand Rapids, Michigan 49546
(616) 776-1176
ConsumerLawyer@aol.com